# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TRAVIS RADDLE,
        Plaintiff,

  v.                                      Case No. 20-C-763

DANIEL KAMINSKI, et al.,
        Defendants.

## ORDER

Plaintiff Travis Raddle, who is confined at the Fox Lake Correctional Institution, filed this case under 42 U.S.C. § 1983. He is proceeding on a claim that defendant Daniel Kaminski applied excessive force during a search that occurred while the plaintiff was a pretrial detainee at the Milwaukee County Jail.[1] The defendant has filed a motion for summary judgment.

## I. BACKGROUND

The plaintiff was confined at the Milwaukee County Jail ("Jail") from October 11, 2018 to January 20, 2021. At all times relevant to this case, the defendant, Daniel Kaminski, worked at the Jail as a correctional officer.

On April 12, 2020, at approximately 7:30 p.m., correctional officers were conducting a "shakedown" in Housing Unit 5D, in which all inmates and their cells were searched for contraband items. During a shakedown, it is standard operating procedure that an inmate comes out of his cell and stands facing the wall with his hands up while a

---

[1] In my order screening the complaint, I dismissed other defendants from the case for failure to state a claim upon which relief may be granted. (ECF No. 11.)

head-to-toe search occurs. The defendant was tasked with conducting a visual head-to-toe search of the plaintiff that involved a hair check, a shake out of the collar, and a search under the armpit area, waistband and outside of the legs. Officer Hynst was tasked with performing the search inside of the plaintiff's cell.

When the defendant and Officer Hynst opened the plaintiff's cell door to conduct the search, the plaintiff walked outside of the cell as ordered. Officer Hynst then went inside the cell and the defendant remained outside the cell with the plaintiff so that he could search the plaintiff's body for contraband items. Once he was standing outside the cell with the plaintiff, the defendant could see that the plaintiff had elastic pieces in his hair that had been modified to be used as hair ties. It is against institution rules to possess items that have been modified. Raddle Dep. at 48:1–48:12. The defendant ordered the plaintiff to remove the hair ties. The plaintiff admits that the defendant ordered him to remove the hair ties, but he contends that the defendant did not also explicitly tell him to give the hair ties to the defendant. *Id.* at 47:9–47:18.

After removing the hair ties from his hair, the plaintiff placed one of the hair ties on his left wrist while handing the defendant the other. The defendant states that he ordered the plaintiff to give him the tie that he had just placed on his left wrist, and the plaintiff said, "Take it off your damn self." Kaminski Decl. ¶ 17. The plaintiff denies saying this. Raddle Dep. at 49:1–49:14. The plaintiff then turned to face the wall while putting his hands up. As the plaintiff was turning and putting his hands up against the wall, the defendant pushed the plaintiff's body against the wall by placing his right hand on the plaintiff's upper back and applying pressure. Once the plaintiff was stabilized, the defendant removed the hair tie from the plaintiff's wrist with his left hand. A video of this

2

incident shows that the defendant pressed the plaintiff against the wall for only a few seconds. After the defendant removed the hair tie from the plaintiff's left wrist, he released the plaintiff from the hold and continued searching his body.

After he was returned to his cell, the plaintiff requested that Lieutenant Benjamin Jackson come over to his door so that he could make a complaint about the way the defendant conducted the search. Lieutenant Jackson informed the plaintiff that no force was used on him and that no photos would be taken. The plaintiff was eventually evaluated by medical staff and was given an ice pack for what he claimed was swelling around his right eye.

In the present suit, the plaintiff claims that the defendant had no reason to shove him against the wall during the search, and that the shove caused him to him to hit his face on the wall. The plaintiff believes that the shove resulted in injuries that cause migraine headaches and nightmares.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## III. DISCUSSION

3

Because the plaintiff was a pretrial detainee at the time of the alleged events, I review his claims under the Due Process Clause of the Fourteenth Amendment. *See Hardeman v. Curran*, 933 F.3d 816, 821–22 (7th Cir. 2019) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). The Due Process Clause "'protects a pretrial detainee from the use of excessive force that amounts to punishment.'" *Kingsley*, 576 U.S. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). The court must judge the reasonableness of a particular use of force "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* Under an objective reasonableness inquiry, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (citations omitted).

The plaintiff contends that the defendant's use of force was unreasonable because the defendant used force to remove the hair tie from the plaintiff's wrist without first ordering him to surrender it voluntarily. (The defendant states that he did order the plaintiff to surrender the hair tie, but for purposes of summary judgment, I must accept the plaintiff's version of events as true.) However, it is undisputed that the defendant ordered the plaintiff to remove the hair ties from his head, and that the plaintiff removed the hair ties and placed one of them on his wrist. Raddle Dep. at 47:13–48:6. It is also undisputed that, under prison rules, the hair ties were contraband. *Id.* at 48:1–48:12. Because the hair ties were contraband, the plaintiff was not allowed to wear them on his wrist any more than he was allowed to wear them in his hair. So when, in response to the defendant's order to remove the hair ties, the plaintiff transferred one of the ties from his head to his

4

wrist, a reasonable officer could have construed the plaintiff's behavior as a refusal to surrender contraband. At that point, a reasonable officer could have decided to use a minimal amount of force to retrieve the contraband. And the amount of force that the defendant applied was truly minimal. The video of the search shows the defendant pointing or gesturing at the plaintiff's left wrist immediately before the plaintiff placed his hands against the wall, with his face towards the wall. Video at 19:37:15. Once the plaintiff's hands were against the wall, the defendant briefly applied pressure to the plaintiff's upper back while simultaneously removing the hair tie from his left wrist. *Id.* at 19:37:21–27. The shove appears to have been no harder than necessary to keep the plaintiff pressed against the wall for a few seconds. The plaintiff's body was already close to the wall when the defendant pressed him against it. This minimal use of force was objectively reasonable under the circumstances.

Even if this use of force was somehow objectively unreasonable, the defendant would be entitled to qualified immunity. The doctrine of qualified immunity shields public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). More than a "mere defense to liability," it provides "immunity from suit." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions" and "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). The doctrine "is an affirmative defense." *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018). "[O]nce the defense is raised, it becomes the plaintiff's burden to defeat it." *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008). Whether qualified immunity

applies turns on two questions: first, whether the facts presented, taken in the light most favorable to the plaintiff, describe a violation of a constitutional right; and second, whether the federal right at issue was clearly established at the time of the alleged violation. *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (per curiam). These questions may be addressed in either order. *Pearson v. Callahan*, 555 U.S. 223, 236–43 (2009). "If either inquiry is answered in the negative, the defendant official is protected by qualified immunity." *Koh v. Ustich*, 933 F.3d 836, 844 (7th Cir. 2019) (citation and internal quotation marks omitted).

For the reasons I've already explained, the facts presented, even when viewed in the light most favorable to the plaintiff, do not establish a violation of a constitutional right. But even if I am wrong about that, the defendant would be entitled to qualified immunity because the right at issue in this case was not clearly established. A constitutional right is clearly established if "the right in question [is] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015). "[T]he clearly established right must be defined with specificity." *City of Escondido v. Emmons*, __ U.S.__, 139 S. Ct. 500, 503 (2019). This means that the court "analyze[s] whether precedent squarely governs the facts at issue, mindful that [a court] cannot define clearly established law at too high a level of generality." *Strand v. Minchuk*, 910 F.3d 909, 917 (7th Cir. 2018). The Supreme Court has explained that it is particularly important to adhere to this requirement in excessive force cases, as it can be difficult to determine how the law on excessive force will apply to a factual situation. *Smith v. Finkley*, 10 F.4th 725, 742 (7th Cir. 2021). "[T]he result depends very much on the facts of each case," *Emmons*, 139 S. Ct. at 503, and "[a]n

officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Kisela v. Hughes*, __ U.S. __, 138 S. Ct. 1148, 1153 (2018) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014)).

In the present case, the plaintiff has not pointed to any authority clearly establishing that the Due Process Clause prohibits a correctional officer from using force sufficient to hold an inmate against a wall while the officer retrieves contraband from the inmate's body in response to the inmate's apparent refusal to turn over the contraband voluntarily. Nor has my own research revealed such authority. Accordingly, the defendant is entitled to qualified immunity under the clearly established prong of the two-part test.

## IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendant's motion for summary judgment (ECF No. 43) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment dismissing this case.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Federal Rules of Appellate Procedure 3 & 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment

under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within 28 days of the entry of judgment. Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend either of these deadlines. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 22nd day of June, 2022.

/s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge